UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NANCY SANCHEZ,<br><br>                Plaintiff,<br>    v.<br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration<br><br>                Defendant. | Case No.: C 11-4679-PSG<br><br>**ORDER DENYING PLAINTIFF NANCY SANCHEZ'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT MICHAEL J. ASTRUE'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>**(Re: Docket Nos. 27, 29)** |

Plaintiff Nancy Sanchez ("Sanchez") seeks review of the decision by Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her disability insurance benefits.[1] Sanchez moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the arguments of counsels, the court DENIES Sanchez's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment and remands the decision back to the ALJ for further consideration.

---

[1] The challenged decision was rendered by the Administrative Law Judge (the "ALJ") on March 12, 2010. The ALJ's decision became final on July 22, 2011, when the Appeals Council of the Social Security Administration denied Sanchez's request for administrative review of the decision.

1

Case No.: 11-4679
ORDER

# I. BACKGROUND

The following facts are taken from the decision by the ALJ and the accompanying administrative record ("AR"). Sanchez was born July 30, 1962,[2] and has a 10th grade education.[3] She has not engaged in substantial gainful activity since July 18, 2008[4] and has very little relevant past work history.[5] From 1985 until 2009, she received $794.59 of income.[6] Sanchez has been diagnosed with hypertension, diabetes, and chronic obstructive pulmonary disease ("COPD").[7] She also has been diagnosed with mild depression and polysubstance (i.e., alcohol and cocaine) dependence that is currently in remission.[8]

## A.   Medical Evidence

Sanchez claims that she is unable to work due to lower back pain, knee pain, shortness of breath, fatigue,[9] and she alleges that she has difficulty walking, sitting, and standing because her knees cannot support her and her legs become numb.[10] She also complains that she tires easily and cannot walk more than one block without having to sit down to catch her breath.[11] She believes that the pain she feels during her ambulation, including knee pain, is caused by her weight.[12] Though Sanchez says that she takes medications to eliminate her knee pain, she also claims that

---

[2] *See* AR at 72.

[3] *See id.* at 30, 338.

[4] *See id.* at 27.

[5] *See id.* at 30, 80, 150.

[6] *See id.* at 126, 150.

[7] *See id.* at 27.

[8] *See id.* at 338, 341-42.

[9] *See id.* at 29, 80

[10] *See id.* at 29, 58, 338

[11] *See id.* at 53, 56, 57.

[12] *See id.* at 91, 150, 426, 445, 480, 508.

those medications cause her to become drowsy and unable to complete her daily chores.[13] She attributes her obesity to psychotropic medication she has been taking and to her difficulty with a proper diet.[14] Her treating psychologist, Dr. Floyd Finney ("Finney"), notes that Sanchez eats fast food two or three times a week, even though she is on a 1,500 calories in-take restriction because of her diabetic condition.[15]

Despite claiming a link between her weight and her medication, Sanchez concedes that she has been overweight since the 1990s, and the record shows that she began taking the psychotropic medication in 2006.[16] The medical record also indicates a lack of swelling, knee tenderness, or edema.[17] There is no x-ray or other clinical evidence regarding her knees. In the disability application, to the question, "How do your illnesses, injuries, or conditions limit your ability to work?" Sanchez replied, "[O]besity is [the] main problem with walking, sitting, standing and laying down."[18]

During a consultative visit in September 2008, the Social Security medical examiner Dr. Jay Dhiman ("Dhiman") observed that Sanchez, who is 5'1" tall, weighed 276 pounds,[19] had a "normal gait, was able to get on and off the examination table without difficulty, heel-toe walked with only mild instability, and exhibited the negative straight leg raise, full range of motion, and normal muscle strength, bulk and tone."[20] Dhiman explained that Sanchez's "excessive abdominal tissues" pull on her back and cause lower back pain, which can limit her ability to walk.[21] Dhiman

---

[13] *See id.* at 55.

[14] *See id.* at 30, 50, 61.

[15] *See id.*

[16] *See id.* at 30.

[17] *See id.* at 426, 446, 480, 502-03.

[18] *See id.* at 150.

[19] *See id.* at 30, 337.

[20] *See id.* at 29, 340.

[21] *See id.* at 340.

3

Case No.: 11-4679
ORDER

also noted that Sanchez did not use any devices to help her with walking.[22] According to Dhiman, Sanchez is mildly depressed.[23] He concluded, however, that Sanchez "does not have any visual communicative, or workplace environmental limitations." [24]

Dr. Steven Gerber ("Gerber"), a Disability Determination Services medical examiner, noted that Sanchez's medical records revealed only mild degenerative disc disease in the lumbar section of her spine, which, along with her obesity, are the primary bases for the pain and the reduction in her physical residual functional capacity ("RFC").[25] Gerber concluded that Sanchez's smoking caused her hypertension, diabetes, and history of chronic obstructive pulmonary disease ("COPD") and that her mild degenerative disc disease is the result of her lumbar spine and her obesity.[26] He also noted that references within her medical record indicate that she did have a history of smoking,[27] even though other references indicate that she denied smoking.[28]

Dr. Maria Acenas ("Acenas"), a Disability Determination Services psychiatric examiner, evaluated Sanchez's psychological condition on October 10, 2008.[29] Acenas found that Sanchez showed signs of mild depression, but also that she was receiving the appropriate psychiatric treatment and that "the likelihood of recovery is great." [30] According to Acenas' assessment, Sanchez is able to "perform work activities on a consistent basis and maintain regular attendance in

---

[22] *See id.* at 339-40.

[23] *See id.* at 340.

[24] *See id.*

[25] *See id.* at 29. A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[26] *See id.* at 40-41.

[27] *See id.* at 400, 406.

[28] *See id.* at 338, 390.

[29] *See id.* at 27-28, 341.

[30] *See id.* at 27-28, 342-43.

4

Case No.: 11-4679
ORDER

the work place." [31] Other examining psychiatrists, Dr. E. Murillo ("Murillo") and Dr. A. Garcias ("Garcias"), also concluded that, according to her medical records, Sanchez's mental impairment was "mild to non-severe."[32]

During her February 2010 visit to her treating psychologist, Finney, however, she was diagnosed with "[b]ipolar disorder mixed most recent depressed with psychotic features," because she exhibited symptoms of auditory hallucination.[33] Approximately one week before Finney provided the above assessment, he documented that Sanchez had a "euthymic mood with appropriate bright effect and coherent thought process," that she was "goal oriented, and that she had no delusion, hallucinations, or suicidal or homicidal ideations."[34] Sanchez admitted to Finney that she had been feeling "better and calmer."[35] Her other treating psychiatrist, Dr. Gialani Akbar ("Akbar"), also diagnosed her with "major depressive disorder, moderate recurrent with moderate psychotic features."[36]

**B.   Hearing**

On July 2008, Sanchez filed an application for Supplemental Security Income, alleging disability beginning January 1, 2000.[37] The claim initially was denied on November 3, 2008, and upon reconsideration on March 4, 2009.[38] Thereafter, Sanchez filed a written request for hearing on March 30, 2009.[39] Sanchez appeared and testified at a hearing held February 25, 2010, in San

---

[31] *See id.* at 343.

[32] *See id.* at 359, 361.

[33] *See id.* at 531, 535, 536.

[34] *See id.* at 513-19, 525, 528.

[35] *See id.* at 536.

[36] *See id.* at 521.

[36] *See id.* at 531, 535, 536.

[37] *See id.* at 25.

[38] *See id.*

[39] *See id.* at 25, 85-87.

5
Case No.: 11-4679
ORDER

Jose, California. Also testifying were Gerber and Monica Pena-Duffy, Sanchez's case manager. At the hearing, Sanchez was represented by counsel.[40]

**C.    ALJ's Findings**

The ALJ determined that because Sanchez's RFC allowed for the full range of sedentary work, considering Sanchez's age, education, and work experience, Sanchez was not disabled.[41] For the first step of the five-step disability analysis discussed more fully below, the ALJ found that Sanchez had not engaged in substantial gainful activity from July 18, 2008, the application date.[42] At step two, he also found Sanchez's mild degenerative disc disease of the lumbar spine and obesity qualified as severe impairments under 20 C.F.R. § 404.1520(c), but none of her other alleged impairments qualified.[43] At step three, the ALJ found that Sanchez's qualifying severe impairments did not meet any of the listed impairment requirements.[44]  At steps four and five, he determined that, although Sanchez had no past relevant work, Sanchez had the RFC to "perform the full range of sedentary work as defined in" 20 C.F.R. § 404.967(a).[45] The ALJ specifically found that Sanchez "is limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently; standing or walking 4 hours in an 8-hour workday; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and never climbing ladder, ropes or scaffolds. She is also limited to performing simple, repetitive tasks because of limited education and lack of prior relevant work."[46]

---

[40] *See id*. at 35-71.

[41] *See id*.

[42] *See id.* at 27.

[43] *See id.*

[44] *See id.* at 28

[45] *See id*.

[46] *See id.*

6

Case No.: 11-4679
ORDER

1   For his RFC determination, the ALJ considered opinion evidence in accordance with the
2   requirements of 20 C.F.R. § 416.927. [47] He noted that in making his finding he "considered all
3   symptoms and the extent to which these symptoms can reasonably be accepted as consistent with
4   the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §
5   416.929."[48] He explained that in considering Sanchez's symptoms, he must determine whether
6   there is an impairment that can reasonably be expected to produce the claimant's pain or other
7   symptoms.[49] He further explained that, once an underlying physical or mental impairment has
8   been identified, he was required to evaluate the intensity, persistence, and limiting effects of pain
9   or other symptoms.[50]

The ALJ provided several grounds for his determination. Although he noted that Sanchez's complaints could be caused by her impairments, which can "reasonably be expected to cause the alleged symptoms," Sanchez's "statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." [51] The ALJ questioned Sanchez's credibility in light of her "long history of substance abuse, which she only recently overcame, her history of multiple incarcerations for check and welfare fraud, and her inconsistent reports regarding the source of her obesity." [52] In his RFC discussion, the ALJ did not elaborate upon his finding regarding Sanchez's alleged depression, COPD, knee pain, or combinations of those impairments with the impairments he found at step two.

Sanchez requested review by the Appeals Council. The Appeals Council found that Sanchez had a good reason for delay in filing the request for review, but denied review in a Notice

---

[47] *See id.* at 29.

[48] *See id.*

[49] *See id.*

[50] *See id.*

[51] *See id.*

[52] *See id.* at 30.

7

Case No.: 11-4679
ORDER

of Appeals Council Action dated July 22, 2011, [53] thus making the decision of the ALJ the final decision for purpose of judicial review.

## II.   LEGAL STANDARDS

### A.   Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's final decision denying Sanchez benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[54] In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[55] When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[56] Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[57] "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."[58]

### B.   Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process. In the first step, the ALJ must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[59] If the claimant is not currently

---

[53] *See id.* at 1-4.

[54] *Moncada v. Chater,* 6 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[55] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[56] *Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501(9th Cir. 1989).

[57] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

[58] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

[59] *Id.*

engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.[60]

If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded.[61]

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the ALJ to determine whether the claimant has sufficient RFC to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[62] The plaintiff has the burden of proving that he or she is unable to perform past relevant work.[63] If the claimant meets this burden, a prima facie case of disability is established. The ALJ then bears the burden of establishing that the claimant can perform other substantial gainful work;[64] the determination of this issue comprises the fifth and final step in the sequential analysis.

### III.   DISCUSSION

Sanchez argues the following errors in the ALJ's decision: (1) in his step four RFC analysis, the ALJ failed to include all of Sanchez's impairments—both severe and non-severe—as well as testimony from a vocational expert; (2) the ALJ incorrectly dismissed the opinions of

---

[60] *Id.*

[61] *Id.*

[62] *Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[63] *Id.*

[64] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

9
Case No.: 11-4679
ORDER

Sanchez's treating physicians and medical providers; and (3) the ALJ's credibility determination is not supported by the record.

The court first clarifies how the standards for determining "severe impairments" shift between step two and the RFC determination at step four.[65] At step two, the determination focuses on whether claimants have any impairment that affects their ability to work, and if they do not, they are immediately categorized as "not disabled."[66] "[S]tep two inquiry is a de minimis screening device to dispose of groundless claims."[67] At step three, claimants with severe impairments that are consistent with or parallel to the listed criteria are immediately categorized as "disabled."[68] Step four and the RFC determination are applied to claimants like Sanchez—those claimants who have impairments that affect their employment, but the impairments require further analysis to determine whether claimants can be gainfully employed.[69]

Even if a particular impairment does not by itself satisfy the step two severity requirement, the ALJ is required to "consider the limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [claimant's] residual functional capacity."[70] In other words, as part of the step four analysis, the ALJ must combine all of the impairments alleged by the claimant, even the ones that the ALJ concluded to be non-severe at step two.[71] In looking at this combination, the ALJ must "explicitly account for the direct and marginal effects of the plaintiff's" alleged impairment.[72]

---

[65] 20 C.F.R. § 404.1520(a)(4).

[66] *Id*. § 404.1520(c).

[67] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[68] 20 C.F.R. § 404.1520(d).

[69] *See* 20 C.F.R. § 404.1520(a)-(f).

[70] 20 C.F.R. § 416.945(e); *see also Reddick v. Chater*, 157 F.3d. 715, 724-25 (9th Cir. 1998).

[71] *See* 20 C.F.R. § 404.1545(e).

[72] *Id*.

10
Case No.: 11-4679
ORDER

Sanchez argues that the ALJ failed to include all of Sanchez's impairments in the step four RFC analysis.[73] She alleges that the ALJ included only "mild degenerative disc disease of the lumbar spine and obesity."[74] Sanchez asserts that the ALJ also should have included her diagnosis of asthma as part of the RFC analysis.[75] Sanchez further contends that the ALJ failed to consider Sanchez's "knee pain."[76] Regarding her mental condition, Sanchez argues that her depression did not improve as the psychiatric examiner Acenas had expected it would, because she continued to exhibit symptoms of mood anxiety and auditory hallucination as determined by her psychologist Finney during her early 2010 visits.[77] Therefore, she argues that her depression should also be included in the step four analysis.[78]

In response, the Commissioner argues that the evidence does not support a finding that Sanchez's asthma, mental condition, or knee pain was severe, nor does Sanchez show how these impairments would further limit her functioning.[79] The Commissioner contends that Sanchez "fail[ed] to show how her asthma limits her in any way, and mention[ed] only her diagnosis."[80] Regarding Sanchez's complaint of knee pain, the Commissioner highlights that in Sanchez's own citations of her medical records, multiple references demonstrate examination results of "generally normal" knees.[81] As to Sanchez's claim of persistent symptoms of depression, the Commissioner reasons that she "incorrectly relies on a diagnosis in arguing that her depression constituted

---

[73] Docket No. 22, at 5.

[74] *Id.* at 6.

[75] *Id.*

[76] *See id.* at 7.

[77] *See id.* at 6.

[78] *See* Docket No. 29, at 3.

[79] *See* Docket No. 27 at 4.

[80] *See id.*

[81] *Id.* at 5.

11
Case No.: 11-4679
ORDER

impairment."[82] The Commissioner cites the ALJ's findings that Sanchez's "treatment records indicated that she was generally doing well."[83]

Even if Sanchez was challenging the ALJ's findings at step two—which she does not—the court agrees with the Commissioner that substantive evidence supports the ALJ's determination that Sanchez's claim of asthma was not severe as part of the step two analysis.[84] Sanchez cites only two mentions of asthma-related symptoms reported in her medical records.[85] Both references appeared to be Sanchez's own reports of "shortness of breath with walking, wheezing sometimes," rather than actual observations from a qualified physician.[86] Evidence in the record suggests her breathing difficulties are caused by her smoking habit.[87] Although Sanchez's two citations to the AR indicate that she did not have a history of smoking, other references in the record indicate that she did have a history of smoking.[88] As Gerber suggested, "one's pulmonary function would improve if one stopped smoking."[89]

Substantial evidence also supports the ALJ's decision to characterize her knee pain as non-severe. Many of Sanchez's purported records regarding her knee pain or falls as result of her knees are her own reports of the incidents.[90] Several physicians, however, diagnosed Sanchez's knees to

---

[82] *Id.* (citing *Verduzo v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999)).

[83] *Id.*

[84] In light of Sanchez's shifting position on what exactly she challenges, the court does not find fault with the Commissioner's defense of ALJ's step two analysis. In her opening brief, Sanchez repeatedly questions the ALJ's "severe impairments" findings—a clear challenge under step two. But in her reply, Sanchez focuses exclusively on the ALJ's RFC analysis—a step four challenge.

[85] *See* AR at 338, 390.

[86] *Id.* at 338.

[87] *See id.* at 400, 406.

[88] *See id.* at 338, 400, 406.

[89] *See id* at 40.

[90] *See id.* at 282, 317, 426, 427, 445, 480, 493, 592.

12

Case No.: 11-4679
ORDER

be normal.[91] Without more physician diagnoses to substantiate the severity of her pain, Sanchez's claim is largely subjective and not medically determinable.[92] Based on substantial evidence in the AR, the ALJ did not err in excluding Sanchez's asthma and COPD and finding her knee pain to be non-severe at the step two analysis.

As to Sanchez's claims regarding depression, Sanchez cited her own reports of persisting incidents of auditory hallucination and mood anxiety.[93] Finney's prescription of antidepressant medication substantiated Sanchez's claim of depression, but Sanchez also conceded that her condition was improving.[94] Sanchez's own admission of her improving mental condition provides evidence to support the ALJ's ruling that her depression was non-severe for purpose of step two.

The problem lies at step four, where the ALJ plainly failed to explicitly account for all of Sanchez's alleged impairments. There is no real question that the ALJ addressed Sanchez's issue of "mild degenerative disc disease of the lumbar spine" and obesity, among other ambulation problems.[95] But the ALJ plainly does not address Sanchez's asthma, depression, or knee pain.[96] Although the ALJ claimed to have "considered all symptoms and the extent to which these symptoms can be reasonably accepted,"[97] the ALJ's decision omits any discussion as to exactly how the ALJ excluded or included Sanchez's asthma, depression, or knee pain in his RFC assessment. The Commissioner points to the ALJ's RFC finding limiting Sanchez to simple repetitive tasks, but the ALJ himself attributes this limitation to Sanchez's limited education and work experience, not her depression or other non-severe impairments. As the Ninth Circuit explained in *Celaya v. Halter*, 20 C.F.R. § 404.1545 requires the ALJ to provide an explicit

---

[91] *See id*. at 426, 446, 480, 502-503.

[92] *See* 20 C.F.R. § 416.908.

[93] AR at 528.

[94] *See id.* at 528, 536.

[95] AR at 30.

[96] *See id.* at 28-30.

[97] AR at 28.

13

Case No.: 11-4679
ORDER

account regarding his evaluation of all of claimant's medically determinable impairments, even if they were determined to be non-severe in step two.[98]  Even the Commissioner's own regulation acknowledges this requirement: "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[99]  The ALJ's RFC evaluation, however, said nothing of Sanchez's asthma, depression, or knee pain.[100]  This was erroneous as a matter of law.

The ALJ's legal error requires remand for a determination of how Sanchez's other medically determinable impairments affect the step four analysis.[101]  Because the court finds remand is appropriate, it does not reach Sanchez's other arguments.

**IT IS SO ORDERED.**

Dated:  March 7, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[98] 33 F.3d 1177, 1183 (9th Cir. 2003)

[99] *Id.* at 1182 (citing SSR 96-8P (S.S.A July 2, 1996)).

[100] AR at 28-30.

[101] *See Celaya,* 33 F.3d at 1183.

14
Case No.: 11-4679
ORDER